AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

2019 AUG 23  A 10: 28

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Samsung Cellular Telephone,<br>Model SM-N900A, IMEI: 358579058437675 | )<br>)<br>)  Case No. '19MJ10477<br>)<br>)<br>) |

BY                    DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2 (incorporated herein)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2 (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960 and 963; 841 and 846; and 843(b) | Importation of a Controlled Substance (Conspiracy to do the same), Distribution of and Possession with Intent to Distribute a Controlled Substance (Conspiracy to do the same), Unlawful Use of a Communication Facility |

The application is based on these facts:
See Affidavit of Special Agent Kyle Klein (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Kyle Klein
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/23/19

_____
Judge's signature

City and state: El Centro, CA          Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and Conspiracy to do the same); Title 18, United States Code, Section 2, Aiding and Abetting the Unlawful Importation of a Controlled Substance; Title 21, United States Code, Sections 841 and 846, Distribution and Possession with Intent to Distribute Controlled Substances (and Conspiracy to do the same) and Title 21, United States Code, Section 843(b), Unlawful Use of a Communication Facility (the **Target Offenses**) is:

> Samsung Cellular Phone
> Model SM-N900A
> IMEI: 358579058437675
> **(Target Device #2)**

**Target Device #2** is currently in the possession of Homeland Security Investigations, 2051 N. Waterman Avenue, El Centro, California 92243.

## **ATTACHMENT B-2**

Authorization to search **Target Device #2** described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device #2** for evidence described below. The seizure and search of **Target Device #2** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 12, 2019 to May 12, 2019:

a. tending to indicate efforts to import heroin, or other federally controlled substances from Mexico into the United States, and to distribute heroin or other federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of heroin, or other federally controlled substances, from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, or other federally controlled substances, from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

d. tending to identify travel to or presence at locations involved in the importation of heroin, or other federally controlled substances from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device #2**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of the Target Offenses.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One Blu Cellular Phone, Model TANK MEGA, IMEI: 354555090967584, IMEI 2: 354555090967592 (**Target Device #1**); and<br><br>(2) One Samsung Cellular Phone, Model SM-N900A, IMEI: 358579058437675, (**Target Device #2**) | **AFFIDAVIT OF SPECIAL AGENT KYLE KLEIN IN SUPPORT OF A SEARCH WARRANT** |

I, Special Agent Kyle Klein, having been duly sworn, declare and state as follows:

## I.
## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices:

   Blu Cellular Phone
   Model TANK MEGA
   IMEI: 354555090967584
   IMEI 2: 354555090967592
   (**Target Device #1**)

   Samsung Cellular Phone
   Model SM-N900A
   IMEI: 358579058437675
   (**Target Device #2**)
   (collectively, the **Target Devices**)

and seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and Conspiracy to do the same); Title 18, United States Code, Section 2, Aiding and Abetting the Unlawful Importation of a Controlled Substance; Title 21, United States Code, Sections 841 and 846, Distribution and Possession with Intent to Distribute Controlled Substances (and Conspiracy to do the same) and Title 21, United States Code, Section 843(b), Unlawful Use of a Communication Facility (the **Target Offenses**).

2. The **Target Devices** were seized from Defendant Silvia Gabriela Felix-Zamora (**Defendant** or **Felix-Zamora**) at the time of her arrest for Importation of Heroin on May 12, 2019, at the Calexico West Port of Entry. The **Target Devices** were found in Defendant's vehicle at the time of her arrest. The **Target Devices** are currently in the possession of Homeland Security Investigations, 2051 N. Waterman Avenue, El Centro, California 92243.

3. The search of the **Target Devices** supports an investigation and prosecution of Defendant for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the **Target Devices,** as described in Attachments A-1 and A-2 will produce evidence of the Target Offenses, as described in Attachment B-1 and B-2.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the **Target Devices,** it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II

## **AFFIANT'S EXPERIENCE AND TRAINING**

5. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been so employed since February 2018. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to the Investigative Services Group in El Centro, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am currently assigned the Imperial County Narcotics Task Force. I am cross designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code. Prior to being a Special Agent with HSI, I was employed as a Police Officer and Narcotics Detective with the City of Pembroke Pines Police Department for approximately five years. During this time, I investigated a multitude of narcotics related complaints.

6. During my tenure with HSI, I have participated in the investigation of numerous narcotics smuggling organizations, which have resulted in the issuance of search warrants, arrest warrants, and the indictments of persons for such crimes. In the course of my duties, I investigate and prepare for prosecution cases against individuals suspected of bringing in and transporting narcotics into the United States with the intent to distribute; and individuals suspected of transporting bulk cash derived from narcotics proceeds out of the United States.

7. By virtue of my employment with HSI, I have performed various tasks which include, but are not limited to: functioning as a case agent, or co-case agent for investigations of narcotics smuggling organizations; functioning as a surveillance agent and thereby observing and recording the movements of persons suspected of narcotics

3

smuggling; interviewing suspects, witnesses, and cooperating individuals with specific knowledge relevant to narcotics trafficking.

8. I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

9. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, Sections 952, 960 and 963.

10. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have learned that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voice-mail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on where and when to deliver the controlled substances.

4

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

   g. The use of cellular telephones and other mobile communication devices by conspirators or drug traffickers tends to generate evidence that is stored on the device, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that device.

13. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

    a. tending to indicate efforts to import heroin, or other federally controlled substances from Mexico into the United States, and to distribute heroin or other federally controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of heroin, or other federally controlled substances, from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, or other federally controlled substances, from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

    d. tending to identify travel to or presence at locations involved in the importation of heroin, or other federally controlled substances from Mexico into the United States, and the distribution of heroin, or other federally controlled substances, within the United States;

  e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

## STATEMENT OF PROBABLE CAUSE

### A. DEFENDANTS' ARREST

14. On May 12, 2019, at around 2:00 p.m., Defendant Silvia Felix-Zamora applied for entry into the United States at the Calexico, California West Port of Entry. She was the driver and sole occupant of a black 2004 Nissan Maxima bearing Mexican license plate AKX511A.

15. Customs and Border Protection Officer ("CBPO") Lopez was conducting primary inspections during this time. CBPO Lopez received a negative customs declaration from Defendant. He referred Defendant for secondary inspection based on a computer generated alert.

16. Defendant's Nissan Maxima was scanned by a Z-Portal machine during the secondary inspection process. CBPO Ponce reviewed the images from the Z-Portal scan and discovered anomalies in the vehicle's battery. CBPO Ponce also informed CBPO Sandoval of the anomalies in the battery.

17. CBPO Sandoval lifted the top of the vehicle's battery from the body and discovered several packages within the battery compartment. A total of three packages were removed from the vehicle's battery and the packages weighed a total of approximately 3.14 kilograms (6.90 pounds). The substance inside the packages field-tested positive for the properties of heroin.

7

18. Defendant was arrested and charged with violating Title 21, United States Code, Sections 952 and 960 (Importation of Controlled Substances). The **Target Devices** were seized incident to her arrest.[1]

**B.  DEFENDANT'S POST-*MIRANDA* STATEMENT**

19. After her arrest, Defendant was advised of her *Miranda* rights. She elected to waive them and make a statement.

20. Defendant said she ate breakfast on the morning of her arrest, and then went to pick up the Nissan Maxima from a mechanic shop. She claimed she only knew the mechanic as Alberto and he had fixed a sensor within the vehicle for 2500 pesos.

21. Defendant then said she had given the Nissan Maxima to her cousin, Oscar Felix, approximately one week earlier. She said Oscar Felix had returned the Nissan Maxima to her around 10:40 a.m. the morning of her arrest.

22. Defendant then said Oscar Felix is not her cousin, but someone she met in a shopping plaza in Mexicali, Mexico in September of 2018. She said Oscar Felix purchased the Nissan Maxima for her for $2700 (U.S.D.).

23. Defendant said she was going to retrieve money for Oscar Felix at a Walmart in the United States. She said she had previously retrieved money for Oscar Felix and was doing it because he had purchased the Nissan Maxima for her.

24. Defendant said on a previous occasion she had crossed the Nissan Maxima into the United States, driven to a Walmart parking lot, and then called Oscar Felix to let him know she had arrived at the Walmart. She said she met a group of unknown males in the Walmart parking lot and they swapped the battery out of the Nissan Maxima and replaced it with a different one. She stated she had met unknown people for Oscar Felix on more than one occasion.

---

[1] The contents of the **Target Devices** were manually reviewed at the time of Defendant's arrest. This information is provided for purposes of full disclosure, but I ask the Court not to consider this information in making its probable cause determination whether to authorize the requested search and seizure warrant.

8

25. Based on my experience investigating narcotics smugglers, Defendant may have used the **Target Devices** to coordinate with the other parties involved regarding the importation of methamphetamine. I believe that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the **Target Devices**. This data may include information that is relevant to Defendant's narcotics trafficking activities, including identifying other persons involved in their narcotics trafficking activities.

26. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. All parties involved communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. Accordingly, probable cause exists to believe that evidence of the aforementioned offenses exists on the **Target Devices** for the period of February 12, 2019 to May 12, 2019.

## III

## METHODOLOGY

27. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards

inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## IV
## CONCLUSION

30. Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause to conclude that Defendant utilized the **Target Devices** to facilitate the commission of the Target Offenses.

31. Further, based on Defendant's statement that she had crossed the Nissan Maxima and met unknown males for Oscar Felix on multiple prior occasions, probable cause exists to believe that evidence of the aforementioned offenses exists on the **Target Devices** for the period of February 12, 2019 to May 12, 2019.

32. Because the **Target Devices** were promptly seized during the investigation of Defendant's drug trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activity committed by Defendant continues to exist on the **Target Devices**.

33. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachments B-1 and B-2 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Kyle Klein
Homeland Security Investigations

Sworn to and subscribed before me this 23rd day of August, 2019.

_____
HON. MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE

11